Joyce **ERWIN** et al., Appellants,

. v.

**GUADALUPE VALLEY ELECTRIC CO–OP,** Appellee.

No. 15250.

Court of Civil Appeals of Texas, San Antonio.

Jan. 23, 1974.

Rehearing Denied Feb. 20, 1974.

John F. Morehead, Gibbons & Spivey, Austin, for appellants.

Ben F. Vaughan, III, Austin, for appellee.

CADENA, Justice.

This is a suit to recover for the death of Ruel Erwin, Jr., who was electrocuted when a football goalpost he and others were constructing came into contact with a 14,400–volt distribution line maintained by defendant, Guadalupe Valley Electric Co-op.

Plaintiffs, the persons entitled to sue for damages resulting from such death under the provisions of Article 4671 Vernon's Tex.Rev.Civ.Stat.Ann., are his widow, Joyce Erwin; his surviving children, Eric Lee Erwin and Elise Ann Erwin; and his surviving parents, Mr. and Mrs. Ruel Erwin.

The case was submitted to the jury on a negligence theory. The judgment in favor of defendant, from which plaintiffs appeal, was based on jury findings of no negligence and no damages.

Plaintiffs first complain of the action of the trial court in sustaining defendant's special exceptions to the portion of plaintiffs' pleadings in which they sought to recover under the theory of strict liability, or products liability. The trial court struck the allegations relating to this theory from plaintiffs' pleadings.

On the date of his death, August 11, 1971, decedent was employed as a teacher and football coach by the Navarro Independent School District; and it had been decided that the school would erect its own goalposts for the coming fall football season. The construction was undertaken near the school's industrial shop building. Several pieces of iron pipe were joined to form an "H," the shape of goalposts. After these sections of pipe had been welded on one side, it became necessary to turn the "H" over so that the other side could be welded. To accomplish this the deceased and five others pulled the goalpost, which was too heavy to handle easily, into a ditch beside a service road next to the shop. With two legs of the "H" resting against one of the walls of the ditch, and with three men grasping each of the two other extremities of the legs, the six began "walking" the "H" into an upright position. When the goalpost was in a position approximately perpendicular to the ground, the top portion of one of the legs came into contact with the transmission line which had been strung across the schoolgrounds by defendant. Decedent and one other person were killed, and the remaining four men were burned in varying degrees.

Paragraph IV of plaintiffs' petition alleged that plaintiffs' claim was based on Restatement 2d, Torts, Section 402A. The

petition further alleged: (1) The ". . . electrical product in question in this case . . ." was defective in that the ". . . wires were too low."

(2) The product was also defective because defendant failed to warn the public in general, and the six men who were moving the goalpost in particular, of the dangers involved in ". . . coming within the zone of danger of the product." (3) These defects created an unreasonable risk of harm to ". . . those within the zone of danger of the product." (4) These defects were a producing cause of the death of Ruel Erwin, Jr.

These allegations were followed by others setting out a cause of action based on negligence.

The special exception to Paragraph IV, which was sustained by the trial court, asserted that the product liability theory is inapplicable to the state of facts alleged by plaintiffs, pointing out that plaintiffs' complaint related to the height of the wires, which were not sold, singly or as a part of any other item, and that deceased was not alleged to have been a purchaser, consumer, or user of the wire.

In determining whether plaintiffs' petition stated a cause of action under the theory of strict liability or products liability, we must, of course, assume that the allegations in the petition are true. That is, it must be assumed that the wires were too low and that defendant failed to warn of the danger resulting from such condition. We also assume that the height of the wires and the failure to warn, or either of these facts, created an unreasonable risk of harm.

█ The petition does not allege the existence of any defect in the electrical current, other than the fact that the transmission line through which the current passed was not placed high enough above the ground. We agree, of course, that the placing of a transmission line used as a conduit for high-voltage electrical current at a place where is it reasonably foreseeable that people may come into contact with the line and suffer injury will support a finding of the creation of an unreasonably dangerous condition. But in such a case, the risk of injury does not arise from defective manufacture or assembly of the electricity itself, or from a defective design. The risk arises solely from the location of the product. The situation in this case can be likened to one in which a person, as the result of stepping on a roller skate on a sidewalk, slips, falls and injures himself. In such a case it cannot be persuasively argued that the injury was the result of a defect in the skate. The danger resulted from the fact that the skate was placed on the sidewalk, and not from the fact that the skate was defectively manufactured. Nor can it be argued in such a case that the placing of the skate in a position where it created an unreasonable risk of danger made the skate itself defective. Liability in such a case would have to be based on negligence in placing the skate, or allowing it to remain, on the sidewalk. ·

█ We realize, of course, that a high tension transmission wire is an extremely dangerous thing, not only because the current is deadly, but also because the danger is hidden, so that often there is no way of knowing whether the wire is harmless or deadly until it is too late to do anything about it. Because of these considerations, a court would, perhaps, be justified in placing a high degree of duty on one who transmits electricity in high tension wires to see that no harm befalls a person in proximity to the wire when that person is himself guilty of no wrongdoing. But these considerations do not make the supplier of electricity an insurer.

Here, as pointed out, plaintiffs alleged no defects in the manufacture of the electricity. Even if it be assumed that the doctrine of products liability extends to the sale of electricity, it was incumbent on plaintiffs, if they seek the protection of the doctrine embodied in Section 402A of the

Restatement, and approved by the Supreme Court of Texas in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (1967), to show a defect in the *electricity*. Buckeye Union Fire Ins. Co. v. Detroit Edison Co., 38 Mich.App. 325, 196 N.W.2d 316, 318 (Ct.App.1972).

The same is true with respect to the wire. The petition contains no allegations that the wire was improperly manufactured or improperly designed. Again, the unreasonable risk of injury was created, not as the result of any alleged defect in the wire, but, according to the petition, by the fact that the wire was not placed high enough above the ground.

Since plaintiffs' petition did not allege sufficient facts to bring into operation the doctrine of products liability, the special demurrer to that portion of the pleading which sought to invoke the doctrine was properly sustained.

· We do not consider it necessary to consider whether, under the facts and circumstances of this case, there had been a "sale" of the electricity.

Plaintiffs' second point asserts that the trial court erred in excluding evidence relating to " . . . industry sag and tension standards . . . " when such evidence would have shown " . . . that the failure of the product in question to conform to industry standards was a defect which caused the wire to be too low and which created an unreasonable risk of harm to those in the danger zone."

Point No. 3 complains of the failure of the trial court to admit the standards or charts (relating to sag and tension requirements) themselves. Here, again, plaintiffs contend that defendant's failure to adhere to such standards was a "defect" which caused the wire to be too low, creating an unreasonable risk of harm.

Plaintiffs state in their brief that such testimony was offered, to show the existence of a "defect" in the "product" and that complaint of the exclusion of such testimony is made here for the purpose of showing that plaintiffs were prepared to offer evidence to prove the existence of "defects."

█ In view of our holding to the effect that the fact that the wire was not placed high enough did not amount to a "defect" within the meaning of the doctrine of products liability, we hold that the exclusion of such evidence was not reversible error.

Point No. 4 complains of the exclusion of testimony relating to the position of the wire and how it was strung. Plaintiffs in their brief, state that the excluded evidence would have shown: (1) The height of the wire at all points, in relation to the ground. (2) The fact that at a point other than that at which the goalpost made contact with the wire, the wire was lower than the minimum height prescribed by applicable statutory provisions. (3) The fact that the wire was strung much looser than suggested by industry sag and tension standards, and, therefore, lower. (4) The accident would not have happened if defendant had followed the sag and tension standards. (5) In the opinion of a qualified electrical engineer and electrical transmission expert, the " . . . tension at the time of the accident was unsafe." (6) Defendant's employees were familiar with the "sag and tension" charts.

We repeat our holding that such evidence would not have shown a defect in the electricity. But plaintiffs further assert that such evidence was relevant on the question of defendant's negligence.

At the point at which the goalpost made contact with the wire, the wire was 21.95 feet above the ground. This was a minimum of 1.95 feet higher than required by the applicable statutory standard. Plaintiffs point out that had the wire been 2.17

feet higher at the place where contact was made, the goalpost would have passed under the wire safely.

According to statute, where a wire crosses a road, it must be a minimum of 22 feet above the ground. Plaintiffs offered evidence that, where it crossed the road, the wire was less that 22 feet above the ground. The trial court excluded this evidence on the theory that the only relevant place was the place of contact. Apparently, it is plaintiffs' theory that if the wire had been at the prescribed height at another place, that is, where the wire crossed the road, it would have been higher at the place of contact; and, therefore, no contact would have been made.

■ Even if the exclusion of such evidence was error, it does not constitute reversible error. The jury found the deceased was guilty of contributory negligence. Where the jury finds contributory negligence, the exclusion of testimony relating to the primary negligence of defendant, even if it be error, is harmless error. Connor v. Heard & Heard, Inc., 242 S.W.2d 205 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e. ).

■ Plaintiffs' points Nos. 5, 6 and 7 complain of the jury's "None" answers to the issues inquiring into the pecuniary losses suffered by plaintiffs as the result of Erwin's death. We agree that the evidence discloses pecuniary loss as a matter of law. However, in view of the fact that the jury found Erwin guilty of contributory negligence, plaintiffs are not entitled to recover any amount whatever. The answers to the damage issues, under such circumstances, become irrelevant and cannot be ground for reversal. Houston Lighting & Power Co. v. Brooks, 161 Tex. 32, 336 S.W.2d 603 (1960); Hunter v. Robison, 488 S.W.2d 555 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.