**Dorothy GRAY, Appellant,**

v.

**ENSERCH, INC., d/b/a Lone Star Gas Company, Appellee.**

**No. 2–83–040–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 16, 1984.

Rehearing Denied March 8, 1984.

Ball, Landrith & Kulesz and Chester G. Ball, Bondurant & Garner and William L. Bondurant, Arlington, for appellant.

Shannon, Gracey, Ratliff & Miller and D. Michael Wallach, Fort Worth, for appellee.

JORDAN, BURDOCK and HILL, JJ.

OPINION

HILL, Justice.

This is a suit for personal injuries and property damages arising from a natural gas explosion which destroyed appellant's house. Appellant, Dorothy Gray, filed this suit against appellee, Enserch, Inc., d/b/a Lone Star Gas Company, a public utility engaged in the business of supplying and selling natural gas to domestic and commercial customers. Appellant alleged that Lone Star was negligent in not discovering and repairing a leak in the gas main near her property, which allowed gas to escape and accumulate beneath her house, resulting in an explosion. Additionally, appellant alleges that Lone Star was liable under the theory of strict liability. The trial court rendered an instructed verdict for Lone Star on the issue of strict liability, and rendered a take-nothing judgment for plaintiff on the negligence issue, based upon jury findings favorable to Lone Star.

We affirm.

On December 15, 1978, five weeks prior to the explosion, appellant detected the odor of gas near her gas meter outside her house. She notified Lone Star, which immediately dispatched a serviceman to investigate appellant's complaint. This representative performed various standard tests and determined that several appliances were leaking, and that these could have been responsible for the smell of gas. Although appellant stated that she was not able to smell the gas during the intervening five-week period of time leading up to the explosion, on cross-examination she contradicted herself by testifying that she continued to detect the odor of gas outside her home. It is undisputed, however, that appellant only contacted Lone Star one time to inform it of the odor of gas, and that this was prior to the service call of December 15, 1978.

On January 18, 1979, appellant was at home when her house exploded. The explosion caused appellant only minor personal injuries, but virtually destroyed her house and most of her belongings. The explosion was caused by a gas leak at a fusion point in the gas main outside appellant's meter. The leak allowed the natural gas to escape and travel through the soil to accumulate beneath appellant's house.

In her first point of error, appellant complains of the court's refusal to instruct the jury that Lone Star owed appellant a high duty of care, along with the following definition:

"HIGH DEGREE OF CARE" means that degree of care which would have been used by a very cautious, competent, and prudent person under the same or similar circumstances.

The court's charge in this regard reads in pertinent part as follows:

"ORDINARY CARE" means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances. In determining ordinary care under the circumstances, you may consider the knowledge and experience of the parties and the nature of the product in question.

"NEGLIGENCE" means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

In the case of *Prudential Fire Ins. Co. v. United Gas Corporation*, 145 Tex. 257, 199 S.W.2d 767, 772 (1946), the Supreme Court quoted with approval the rule that because of the highly dangerous character of gas, a gas company must use a degree of care to prevent damage commensurate to the damage which it is its duty to avoid. In the same case, however, the justices approved the trial court's definition of negligence as the "fail[ure] to do that which 'a person of ordinary care and prudence' would have done under the same or similar circumstances." The definition of "ordinary care" in the instant case is more favorable to the appellant than that which was approved by the Supreme Court in *Prudential.* Appellant cites no case which

would require an instruction such as she has offered. Appellant's point of error number one is overruled.

Appellant's second point of error contends that there was "no evidence," or "legally insufficient evidence," to support the jury's answers to Special Issues Nos. 1 through 6 relating to Lone Star's negligence.

■ In our review of appellant's "no evidence" point, it is fundamental that the jury's fact findings must be upheld by us if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d 486, 488 (Tex. 1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEXAS L.REV. 361 (1960).

■ On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the verdict. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evidence which supports the jury's answers to the special issues is so weak, or the evidence to the contrary is so overwhelming, as to warrant a setting aside of the verdict and remanding for a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); Calvert, *supra.*

In Special Issue No. 1, the jury found that Lone Star did not fail to make sufficiently thorough inspections to enable reasonable discovery of gas leaks or breaks in its underground gas main prior to the explosion. Further, the jury answered Special Issue No. 4 finding that Lone Star did not fail to locate and repair the leak in its underground gas main after being advised of the gas odor. Inasmuch as these special issues were answered in the negative, the jury never reached Special Issue Nos. 2, 3, 5, and 6, the issues regarding Lone Star's negligence and the related proximate cause issues, because these issues were submitted conditionally.

■ The testimony regarding Lone Star's standard inspection procedure revealed the methods used by the gas company to detect gas leaks. Lone Star utilizes a procedure whereby a flame ionization machine is set on a jeep which travels up and down a street. The device detects any type of methane gas leak and simultaneously registers the leak on its instruments. The federal government mandates that a natural gas supplier must use this method of inspection to cover their system once every five years, and the regional manager testified that it is Lone Star's policy to do this once every three years. Additionally, while this machine is driving up and down the street, Lone Star has men who walk the customer's yard line with hand-held equipment performing the same function. We find that there is sufficient evidence to support the jury's answer to Special Issue No. 1 that Lone Star did not fail to make sufficiently thorough inspections to enable reasonable discovery of gas leaks or breaks in its underground gas main prior to the occurrence in question.

■ The evidence regarding Lone Star's actions after appellant informed it of the gas odor reflects that the Lone Star service representative sent to investigate appellant's complaint performed a series of standard tests in order to ascertain the cause of the gas leak. The serviceman made a meter test to determine if there were any leaks in the meter, and he performed a bar

test outside her house. A bar test is performed by inserting a probe through the soil in the vicinity of the gas lines, and dropping a hose down into the ground to pull up an air sample, which is then tested by a machine that is connected to the probe. In addition, the serviceman testified that he relit several of the appliances upon finding them turned on but unlit, and that these were all of the leaks he found at that time. We find that there is sufficient evidence to support the jury's answer to Special Issue No. 4 finding that Lone Star did not fail to locate and repair the leak in its underground gas main after being advised of the gas odor. Point of error number two is overruled.

Appellant's third point of error complains of the trial court's submission of special issues inquiring about appellant's contributory negligence. The jury found against appellant in answering these special issues. In its pleadings, Lone Star alleged that appellant was negligent in disregarding the odor of gas on her premises, and in failing to timely notify Lone Star so that the alleged leaks or problems could be corrected. Appellant contends that she owed no legal duty to make additional calls to Lone Star about the leak in the main gas line, and for this reason the trial court erred in submitting the contributory negligence issues to the jury.

 If a person knows that gas is escaping into his home from the main of a gas company, it is his duty to take suitable precaution for his safety. Ordinarily, under such circumstances, it would be his duty to notify the company of the leak ... 38 C.J.S. *Gas* § 44b(1) (1943), and authorities cited therein. Although the point of error presumes that the gas leaking in December was from the same break in the main that was discovered in January after the explosion, the jury apparently accepted Lone Star's position that the two were not necessarily related. The evidence did not conclusively establish such a relationship. Appellant cites no authority for the proposition that a party who discovers a dangerous condition does not have a duty to pro-

tect herself from the consequences thereof. Point of error number three is overruled.

 In her fourth point of error, appellant contends that the trial court erred in directing a verdict against her on the strict liability cause of action. The first basis of strict liability urged by appellant is product liability under RESTATEMENT (SECOND) OF TORTS § 402A (1965). Section 402A provides that one who sells a product in a defective condition which is unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if the seller is engaged in the business of selling such a product, and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. This rule applies although the seller has exercised all possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller. The doctrine of strict product liability will not apply against a utility when the product delivered by the utility is not defective. *Erwin v. Guadalupe Valley Electric Co-Op*, 505 S.W.2d 353, 355–56 (Tex.Civ.App. —San Antonio 1974, writ ref'd n.r.e.). It is, therefore, not applicable in this case at bar since the gas in question was not defective.

Appellant also relies on the doctrine of the nonprofessional sales-service hybrid. Appellant cites no case which would indicate that this theory has been adopted in Texas, but, in any event, this doctrine requires the sale of a defective product by nonprofessionals who provide a product with their service. Sales and Perdue, *The Law of Strict Tort Liability in Texas*, 14 HOUS.L.REV. 1, 118 (1977). Appellant cites no case as authority that this doctrine would be applicable in the absence of a defective product.

[11, 12] Finally, appellant relies on the trespass doctrine of strict liability as contained in RESTATEMENT (SECOND) OF TORTS § 822 (1979). Section 822 of the Restatement establishes liability for an in-

vasion of another person's private use of land if such invasion is either intentional and unreasonable, or is caused by an abnormally dangerous condition or activity. Appellant has not met all of the prerequisites necessary for the imposition of strict liability under that section. First, there is no evidence of an intentional and unreasonable trespass onto plaintiff's land. Second, appellant has failed to demonstrate that the trespass was a result of an "abnormally dangerous activity". This term is defined in RESTATEMENT (SECOND) OF TORTS § 520 (1977), which specifies factors that are to be considered in determining whether an activity is an abnormally dangerous one:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Comment f is particularly instructive: The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, *are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.* [Emphasis added.]

We have not found any Texas cases interpreting this definition of "abnormally dangerous activity" as it applies to a utility, but our review of all six factors neces-

sary for the application of § 520 leads us to conclude that at the time of the explosion in question, Lone Star was not engaged in an "abnormally dangerous activity" within the meaning of § 822. Appellant cites no case supporting strict liability under this section for an unintentional trespass such as the one at bar, nor does it cite any case as authority that the transmission of natural gas by a public utility is an abnormally dangerous condition as required for liability under § 822 and as defined by § 520.

We hold that the trial court did not err in removing the issue of strict liability from the jury, and in directing a verdict on this issue for Lone Star. We overrule appellant's fourth point of error.

The judgment of the trial court is affirmed.