**Brigid HANUS, Individually and Appellant on Behalf of the Estate of David Lee Hanus, Appellant,**

**v.**

**TEXAS UTILITIES COMPANY, Appellee.**

**No. 2–00–448–CV.**

Court of Appeals of Texas, Fort Worth.

March 14, 2002.

Laird & Jones, L.L.P., Gregory G. Jones, Fort Worth, for appellant.

Cantey & Hanger, L.L.P., John C. Stewart, David A. Palmer, Fort Worth, for appellee.

Panel B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

## OPINION

LIVINGSTON, Justice.

### Introduction

Brigid Hanus ("Hanus"), individually and on behalf of the estate of her late husband David Lee Hanus ("Decedent"), appeals the trial court's grant of summary judgment in favor of Texas Utilities Company ("TU") on her strict products liability and negligence claims. In four issues, Hanus contends that the trial court erred: (1) in not recognizing that TU's failure to warn that power lines were buried constituted a marketing defect that rendered the electricity the lines carried unreasonably dangerous; (2) in holding that TU conclu-sively negated an element of the negligence claim; and (3) in granting, if it did, TU's requested no-evidence summary judgment. We affirm the trial court's judgment.

### Background Facts

Decedent was using a gas-powered auger to dig postholes in his backyard. While digging, he hit the buried electrical cable that carried electricity to his home. The charge carried by the 120/240 volt electrical cable killed him. Hanus subsequently sued TU for the wrongful death of Decedent under negligence, gross negligence, and strict liability theories. TU then sought both traditional and no-evidence summary judgments under Texas Rules of Civil Procedure 166(a) and 166(a)i. The trial court granted TU's motion for summary judgment and entered judgment for TU without specifying on what grounds the judgment was based or whether it was granting a traditional or no-evidence summary judgment.

### Standard of Review

#### 1. Traditional Summary Judgment

In a summary judgment case, the issue on appeal is whether the movant met her summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999). To accomplish this, the defendant-movant

must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *KPMG Peat Marwick*, 988 S.W.2d at 748. To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

### 2. No–Evidence Summary Judgment

■ After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore*, 981 S.W.2d at 269.

### Strict Liability Claims

Hanus contends that the trial court erred in granting summary judgment on her strict liability claim because: (1) as a matter of law, TU had a duty to warn of the dangers associated with its electricity lines; (2) TU failed to negate any element of the claim; and (3) her summary judgment evidence raised fact questions as to each element of the claim.

■ In Texas, section 402A of the Restatement (Second) of Torts governs claims for strict liability in tort. *See* Restatement (Second) Of Torts § 402A (1965); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996). In order to recover for an injury on the theory of strict products liability in tort, the plaintiff bears the burden of proving that: (1) the defendant placed a product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between such condition and the plaintiff's injuries or damages. *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex.1988); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978). Because it is a commodity that can be manufactured, transported, and sold like other goods, electricity is considered a product for strict liability purposes after it has been converted, as it had been here, to a form usable by consumers.[1] *See Reynolds*, 765 S.W.2d at 785.

■ A product may be unreasonably dangerous due to a defect in its manufacture (manufacturing defect) or design (design defect), or because of a failure to provide adequate warnings or instructions (marketing defect). *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex.1997);

---

1. TU does not dispute that the electricity in question was a product.

*Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex.1995). Hanus alleged in her petition and in her response to TU's motion for summary judgment that the electricity was unreasonably dangerous due to a marketing defect, specifically due to TU's failure to provide adequate warnings.

While TU argued in the trial court and to this court that it can only be held liable in a strict products liability action if Hanus could prove the electricity passing through the underground cable was defective, Texas law clearly provides that a lack of adequate warnings or instructions can render an otherwise adequate product unreasonably dangerous. *See Sauder Custom Fabrication, Inc. v. Boyd,* 967 S.W.2d 349, 351 (Tex.1998); *Caterpillar,* 911 S.W.2d at 382 (citing *Lucas v. Tex. Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1984)). To support its argument that Hanus must show a defect in the electricity itself in order to prevail on her strict liability claims, TU cites *Erwin v. Guadalupe Valley Elec. Co–op,* 505 S.W.2d 353, 355 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.) and *Gray v. Enserch, Inc.,* 665 S.W.2d 601, 605 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). We decline to follow *Erwin* and do not construe *Gray* as broadly as does TU.

After noting that the petition contained an allegation that the electricity was defective because of a failure to warn of dangers associated with the product, the *Erwin* court explicitly held that "[t]he petition does not allege the existence of any defect in the electrical current, other than the fact that the transmission line through which the current passes was not placed high enough above the ground." 505 S.W.2d at 355. Thus, the court failed entirely to address the marketing-defect claim. *Gray* cited *Erwin* when it held that "[t]he doctrine of strict product liability will not apply against a utility when the product delivered by the utility is not defective." 665 S.W.2d at 605. This does not preclude the application of strict product liability principles to a utility company, however, when a failure to warn has rendered the product delivered by the utility defective. Therefore, we consider Hanus' marketing-defect strict liability claim based on TU's alleged failure to warn.

### Negligence Claims

Hanus' negligence issues mirror her strict liability issues. She argues that the trial court erred in granting summary judgment against her negligence claim because: (1) as a matter of law, TU had a duty to warn of the dangers associated with its buried power lines; (2) TU failed to negate any element of the claim; and (3) her summary judgment evidence raised fact questions as to each element of the claim. The common-law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 663 (Tex.1999) (Baker, J. concurring); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

### Duty to Warn

The central question in both marketing-defect cases and negligent failure to warn cases is when is a warning necessary to avoid creating an unreasonably dangerous product; in other words, under what circumstances is a manufacturer required to provide a warning. We examine the possible existence of a duty to warn of the dangers of a product in strict liability claims as a question of law. *Am. Tobacco,* 951 S.W.2d at 426; *Firestone Steel,* 927 S.W.2d at 613. In determining whether a duty exists in a particular case, we follow well-established guidelines.

In a marketing-defect suit, an unreasonably dangerous product must present a threat of a harm that would elude the common perception of the product. *See Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387–88 (Tex. 1991). Therefore, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product. *Am. Tobacco,* 951 S.W.2d at 426; *Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978). However, a manufacturer has no duty to warn of obvious risks because a readily apparent danger serves the same function as a warning. *Caterpillar,* 911 S.W.2d at 382; *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, cmt. j (1998) ("In general, a product seller is not subject to liability for failing to warn or instruct regarding risks and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users."). Whether a danger is readily apparent is usually an objective question for the court to determine. *Caterpillar,* 911 S.W.2d at 383.

Texas also recognizes that there is no duty to warn when the risks associated with a particular product are matters "within the ordinary knowledge common to the community." *Joseph E. Seagram,* 814 S.W.2d at 388. That is, liability is foreclosed against a manufacturer "unless a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer with knowledge common to the community." *Am. Tobacco,* 951 S.W.2d at 426. "Common knowledge," though, is an extraordinary defense that applies only when knowledge of danger is "so patently obvious and so well known to the community generally, that there can be no question or dispute concerning [its] existence." *Id.* at 427 (quoting *Brune v. Brown Forman*

*Corp.,* 758 S.W.2d 827, 830–31 (Tex.App.—Corpus Christi 1988, writ denied)).

The case law regarding determining the existence of a duty to warn in the negligence context is also well developed. Before there can be a cause of action for negligence, the court must determine that the defendant had a recognized legal duty or obligation to the plaintiff. *Wheaton Van Lines, Inc. v. Mason,* 925 S.W.2d 722, 729 (Tex.App.—Fort Worth 1996, writ denied); *Way v. Boy Scouts of Am.,* 856 S.W.2d 230, 233 (Tex. App.—Dallas 1993, writ denied). If there is no duty, there can be no negligence liability. *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999). As with strict liability claims, the existence of duty for negligence claims is a question of law for the court to decide from the facts surrounding the occurrence in question. *See Mellon Mortgage,* 5 S.W.3d at 663; *Greater Houston Transp.,* 801 S.W.2d at 525. Also similar to strict liability theory, negligence law does not require warnings against obvious risks or those within the common knowledge of an ordinary consumer. *See Sauder Custom Fabrication,* 967 S.W.2d at 351 (refusing to allow recovery on either products liability or negligent failure-to-warn claim when risk would be obvious to the average user of the product); *Joseph E. Seagram,* 814 S.W.2d at 387–88 (holding that lack of duty to warn of open and obvious danger of alcoholism from prolonged and continuous consumption of alcoholic beverages barred all claims, including those based on products liability and negligence); *Morris v. Adolph Coors Co.,* 735 S.W.2d 578, 585 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.) (holding, based on RESTATEMENT (SECOND) OF TORTS § 388, cmt. k (1965), that dangers that are common knowledge to the ordinary consumer require no warning); RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL

HARM (BASIC PRINCIPLES) § 18, cmt. f (Tentative Draft No. 1, 2001) ("[T]here generally is no obligation to warn of a hazard that should be appreciated by persons whose intelligence and experience are within normal range.").

Neither party cited and we located no Texas authority specifically addressing the duty to warn of buried power lines under either strict liability or negligence theories.[2] However, the supreme court has examined the duty to warn of the dangers of overhead power lines in relation to a negligence claim, announcing that "[a]n electric company's duty to warn of contact with electrical lines arises when it: (1) has failed to comply with applicable codes or ordinances governing the placement of lines; or (2) has reason to anticipate that the lines would be dangerous to the plaintiff." *Reynolds*, 765 S.W.2d at 786.

We construe the *Reynolds* test as consistent with strict-liability-duty-to-warn analysis. Essentially, when we ask, per *Reynolds*, whether the utility failed to comply with codes or had reason to anticipate the lines would be dangerous, we satisfy the general strict liability inquiry of whether the manufacturer knew or should have known of the potential harm to a user because of the nature of its product. We are not alone in perceiving common ground in the analysis of the duty to warn under marketing defect and negligence claims. Commentators and other courts have also recognized that the duty-to-warn analyses of marketing defect and negligence claims are so similar as to be duplicative. When describing why it does not distinguish between negligence and strict liability in discussing warning duties, one noted treatise explained: "In effect, warning claims are negligence claims, as a number of courts agree. Some courts continue to apply the terminology of strict liability in warning cases, but even so, the actual evidence and analysis usually invokes negligence principles of reasonableness." DAN B. DOBBS, THE LAW OF TORTS § 363 (2001) (footnotes omitted).

The Texarkana court has also recognized that the exceptions to the duty to warn that originated in negligence law have been applied to strict liability claims "on the theory that there is no doctrinal distinction between negligence and strict liability failure to warn actions under the Restatement." *Humble Sand & Gravel, Inc. v. Gomez*, 48 S.W.3d 487, 494 n. 1 (Tex.App.—Texarkana 2001, no pet.) (citing *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739 (3d Cir.1990); *Dole Food Co. v. N. Carolina Foam Indus., Inc.*, 188 Ariz. 298, 935 P.2d 876, 880 n. 4 (Ct.App.1996); *Natural Gas Odorizing v. Downs*, 685 N.E.2d 155, 163 n. 11 (Ind.Ct.App.1997)); *see also Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 289 (Iowa 1994) ("After reviewing the authors and comments on the failure to warn question, we believe any posited distinction between strict liability and negligence principles [in warnings cases] is illusory."); *O'Flynn v. Owens–Corning Fiberglas*, 759 So.2d 526, 535 (Miss.Ct.App.2000) ("[E]ven

2. The utilities code now addresses the respective duties of those planning to dig and the owners of underground electric lines. All persons, with limited exceptions, who intend to dig deeper than sixteen inches must first notify a statutorily-created notification center between two weeks and two days before beginning excavation. TEX. UTIL.CODE ANN. §§ 251.002(5), 251.151(a) (Vernon Supp. 2002). The code also requires utilities that provide electricity via underground lines to more than one million residential customers within the state to provide general information about excavation activities, including the toll-free number to call to notify of intent to excavate, to all of its residential customers at least once each calendar year. TEX. UTIL.CODE ANN. § 251.009. Neither of these provisions was in effect, however, at the time of the incident forming the basis of this suit.

though the cause of action for failure to warn could be based on negligence or strict liability in tort, the two theories, while conceptually different, often merge into a single breach of duty."). Because we agree that the analysis of the duty to warn under strict liability and negligence theories invokes the same basic principles, we decide the existence of a duty to warn under both common law theories as a single question.[3]

While *Reynolds* addressed the duty to warn only in the context of overhead power lines, we see no rational basis for not applying the test announced in that case to determine the existence of a duty to warn of buried power lines. Essentially, when we ask whether TU "ha[d] reason to anticipate that the lines would be dangerous to the plaintiff," per *Reynolds*, 765 S.W.2d at 786, we are inquiring into the foreseeability of the danger, the central inquiry of any duty analysis. *See Nations-Bank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex.1996) ("In the absence of foreseeability, there is no duty."); *Greater Houston Transp.*, 801 S.W.2d at 525 (holding fore-seeability of risk to be the foremost and dominant consideration in determining the existence of a duty under the common law doctrine of negligence) (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)). Because it is consistent with strict-liability-duty-to-warn analysis, and because it should apply equally as well to buried power lines as it does to overhead power lines, we will apply the *Reynolds* two part test to determine whether TU had a duty to warn of the dangers associated with its buried power lines under both theories.

## Application

In its summary judgment motion, TU tracked *Reynolds* and argued that it had no duty to warn because it complied with all applicable codes and ordinances governing the placement of underground lines[4] and because "there was no basis for TU to anticipate that the underground line would be dangerous to Plaintiff or Decedent." Hanus' summary judgment response does not contest whether TU had complied with applicable codes or ordi-

---

3. We note that neither party has addressed the potential applicability of section 82.004 of the Texas Civil Practice and Remedies Code, which prevents manufacturer or seller liability for certain inherently unsafe products. TEX. CIV. PRAC. & REM.CODE ANN. § 82.004 (Vernon 1997). This statute went into effect on September 1, 1993. Although no Texas state court has applied it or interpreted it, two federal fifth circuit court opinions have applied it to tobacco claims and held the statute to be a complete bar to recovery under negligence and strict liability theories. *See Hughes v. Tobacco Institute, Inc.* 278 F.3d 417, 422 (5th Cir.2001); *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir.1999). It is unclear, however, whether electricity fits within the statute's definition of a "common consumer product" intended for personal consumption, like other products identified in comment i to section 402A of the Restatement (Second) of Torts. *See also Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex.1999) (in-terpreting the defective design provisions of section 82.005); 2 EDGAR & SALES, TEXAS TORTS & REMEDIES § 41.01[8][a] (2002) (stating that the section 82.004 "inherently unsafe products" provisions tied to comment i should not be confused with the "unavoidably unsafe products" described in comment k of the Restatement (Second) of Torts. However, because a summary judgment can only be granted on the grounds expressly presented in the motion, we need not address section 82.004 here. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex.1997); *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX.R.APP. P. 33.1.

4. Hanus did not allege in her petition that TU's lines were not in conformity with codes regulating the delivery of electricity via underground lines. TU's summary judgment evidence suggests, in fact, that the line was buried six inches deeper than required.

nances so our focus is only on the second *Reynolds'* prong related to foreseeability and duty.

TU relied upon the undisputed evidence that neither Hanus nor Decedent contacted TU to notify the company of plans to dig or to request information about the location of buried lines. TU contends it was under no duty to act to prevent such an unanticipated danger. In Hanus' response to the summary judgment motion, she argued that TU had a duty to warn and included her affidavit swearing that neither she nor her husband knew that the power line that was severed was buried in their backyard.[5] Hanus also attached to her response excerpts from a deposition of Marilyn Kosanke, the employee responsible for safety advertising at TU. Hanus pointed to Kosanke's testimony that: (1) based on her personal observations after eighteen years at TU, she had determined that digging into buried power lines was the second most common cause of death by electrocution; (2) TU had never made any effort to specifically target and warn homeowners who actually have power lines buried in their yards of the presence of those lines; (3) TU does not keep information on the extent and frequency of electrical shocks and deaths; and (4) TU had, to her knowledge, never undertaken to determine consumers' awareness of the hazards of buried electrical lines. Importantly, Kosanke testified, however, that prior to the accident at issue, TU prepared inserts to customers' bills as well as radio spots warning customers to call before they dug and warning of the dangers of underground lines.

According to Hanus, Kosanke's testimony established the existence of TU's duty to warn Hanus and Decedent of the danger of the line buried in their yard. Hanus further argued:

A buried power cable is, by its nature[,] a hidden condition. It is perhaps a matter of common sense that an entity exercising ordinary care would warn persons who may come into contact with this hazard. Given Kosanke's belief that the second most common cause of electrical death is digging into buried power cables, it is difficult to believe that this incident was not foreseeable to the defendant.

The parties clearly fundamentally disagree on foreseeability and duty. TU contends that the accident was not foreseeable because it had no way of knowing that Decedent would dig a hole three feet deep in his backyard in the vicinity of its power line; Hanus contends that the accident was foreseeable because TU should know that burying power lines merely hides a hazard and TU does know that digging into power lines is a common cause of death by electrocution.

■ Although TU did not specifically plead "common knowledge" we believe that here "common knowledge" is subsumed in our treatment of duty.[6] Common knowledge and duty to warn are determinations we make as a matter of law. *Am. Tobacco*, 951 S.W.2d at 427. As discussed above, no warnings are required

5. Hanus did not allege in her petition that the location chosen by TU for the placement of the buried line rendered the product unreasonably dangerous or created a duty to warn. Rather, Hanus asserts that TU owes a duty to specifically warn each residential customer that buried electrical cables exist on their property.

6. *See Am. Tobacco*, 951 S.W.2d at 427 n. 3 ("As we have stated, whether the risks associated with a product are common knowledge is one factor courts consider when determining the existence of a duty to warn.").

when a hazard is commonly known. "Encompassed within the term 'common knowledge' are those facts that are so well known to the community as to be beyond dispute." *Joseph E. Seagram*, 814 S.W.2d at 388. The dangers associated with electricity are beyond dispute and have before been judicially noted; the supreme court recognized that adults are charged "with the knowledge that electric wires are ordinarily dangerous; that they should be avoided wherever possible ... and that it is dangerous to come in close proximity to them." *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 194 (Tex.1997) (quoting *Cloud v. Houston Lighting & Power Co.*, 199 S.W.2d 260, 262 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e)).

Likewise, in this case, Hanus has not presented summary judgment evidence enabling us to conclude that TU's decision to bury the lines created a duty to warn. While Hanus argued that it was common sense that one would provide warnings in such situations, we conclude that an average homeowner would know that lines are buried when his residence has electricity but has no overhead lines carrying the electricity to it. Accordingly, we conclude Decedent clearly knew or should have known of the undisputable dangers associated with coming into contact with electrical lines and TU need not have specifically warned Decedent individually that contact with buried electrical lines in his yard could be dangerous. Thus, on the summary judgment record before us, TU had no special duty to warn because the danger was both obvious and commonly known. While it is unfortunate, even tragic, that Decedent did not appreciate the generally known danger of digging in a yard that contains buried power lines without first ascertaining the placement of those lines, we cannot hold that TU should have foreseen this failure and provided specialized warnings to him. Because TU effectively negated the duty element of both the strict liability and negligence causes of action, we overrule all of Hanus' issues.

## Conclusion

Having held that TU owed no duty to warn of the dangers associated with power lines buried under Hanus' and Decedent's property and, accordingly, that the trial court did not err in granting TU's motion for summary judgment on all of Hanus' claims, we affirm the judgment of the trial court in all respects.

DAUPHINOT, J. filed a concurring opinion.

DAUPHINOT, Justice, concurring.

I respectfully concur in the result only and do not join the majority's reasoning. As the majority points out in a footnote, the legislature has recognized the respective duties of those planning to dig and the owners of underground electric lines.[1] While this legislation was not in effect at the time of Hanus's death, I believe it renders the majority's analysis unnecessary because the legislation will govern future occurrences such as that now before us. Additionally, the analysis of the duty to warn is superfluous because TU's summary judgment evidence that it did warn the public through flyers enclosed in bills and through public service announcements is uncontroverted. For these reasons, I concur in the result only and would hold that TU satisfied any duty to warn.

---

1. Tex. Util.Code Ann. §§ 251.002(5), 251.009, 251.151 (Vernon Supp.2002).