Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## MEMORANDUM OPINION

No. 04-09-00308-CV

Ignacio **LEAL** Sr. and Yolanda Leal, Individually and as Personal Representatives of the Estate of Jason Leal; Minerva Villareal, Individually and as Personal Representative of the Estate of Ubaldo Villareal Jr.; and Gladys E. Russell, as Next Friend of Jasmine Nadine Leal and as Personal Representative of the Estate of Crystine Leal,
Appellants

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 09-02-47808-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed: March 17, 2010

AFFIRMED

This is an appeal from a summary judgment in favor of appellee, State Farm Mutual

Automobile Insurance Company ("State Farm").  Appellants, Ignacio Leal Sr. and Yolanda Leal,

Individually and as Personal Representatives of the Estate of Jason Leal, Minerva Villareal,

Individually and as Personal Representative of the Estate of Ubaldo Villareal Jr., and Gladys E.

Russell, as Next Friend of Jasmine Nadine Leal and as Personal Representative of the Estate of Crystine Leal, sued State Farm and others, seeking damages based on an automobile accident involving a 1991 Honda Accord. On appeal, appellants contend the trial court erred in granting State Farm's motion for summary judgment. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

On July 4, 2006, Jason Leal, Ubaldo Villareal Jr., and Crystine Leal were killed in an automobile accident while riding as passengers in a 1991 Honda Accord. After the accident, appellants sued the following five defendants: Elizabeth Gonzales Perez, the driver of the other vehicle; State Farm, which had owned the Honda Accord and sold it for salvage at an auto auction in 1996; El Nicoya Auto and Parts, which bought the unrepaired salvage vehicle at the auto auction, and repaired, and resold the vehicle in 1996; Villareal Auto Repair, which had done some body work on the Honda Accord in 1996; and Rios Auto Repair, which had performed an inspection of the Honda Accord in 1996. Appellants' claims against Perez, El Nicoya Auto and Parts, Villareal Auto Repair, and Rios Auto Repair remain pending in the trial court.

As to State Farm, in their original petition, appellants alleged State Farm was negligent because it "knew, or should have known, of the Honda's wreckage's dangerous, unsafe and unsound condition, yet failed to warn anyone thereof." State Farm filed a traditional motion for summary judgment. Appellants then filed a first amended petition, asserting State Farm was also liable for strict products liability, essentially on the same theory as their negligence claim. Thereafter, the parties entered into a Rule 11 agreement under which they postponed the hearing on State Farm's motion for summary judgment, agreed to stipulated facts for the purposes of summary judgment, and agreed appellants would not amend their pleadings to add new causes of action.

State Farm and appellants stipulated to the following facts regarding State Farm's involvement with the Honda Accord:

- On December 15, 1995, the Honda Accord was involved in a two-car collision in which the driver of the Honda Accord was a State Farm insured.
- State Farm handled the insurance claim, paid the insured $9,867.00 for the value of the car, and obtained title to the car.
- A month later, State Farm surrendered the title certificate for the Honda Accord and obtained a Texas Salvage Title Certificate, indicating the car was severely damaged to the extent of seventy-five percent or more of its value.
- State Farm fully complied with the regulations set out in chapter 501 of the Texas Transportation Code when it obtained the Texas Salvage Title Certificate.
- The next month, State Farm sold the car in its unrepaired condition at an insurance auto auction.
- The salvage status of the car was disclosed at the auction, and El Nicoya Auto and Parts purchased the vehicle.
- Thereafter, State Farm had no further involvement with the car. Subsequently, El Nicoya Auto and Parts repaired the Honda Accord and sold it to Charles and Bonnom Scott.
- At the time of the sale, the Honda Accord's certificate of title contained a "Rebuilt Salvage" designation.
- In 2003, the Scotts sold the car to Inez Cedillo, who was the owner of the car at the time of the July 2006 fatal automobile accident.

On December 15, 2008, appellants filed a second amended petition, detailing their negligence and strict products liability claims against State Farm. State Farm again moved for summary judgment on appellants' negligence claim on the grounds that State Farm owed no duty to appellants, and State Farm did not breach any duty to appellants. State Farm also moved for summary judgment on appellants' strict products liability claim, asserting, among other things, that the salvage-titled car was neither in a defective condition or unreasonably dangerous when it was sold at auction. State Farm argued that accordingly, appellants could not recover against State Farm on either their negligence or strict products liability claims.

After a hearing, the trial court granted summary judgment in favor of State Farm on all claims. The trial court then severed appellants' claims against State Farm into a new cause number from the appellants' claims against the other defendants, making the judgment final and appealable. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In the event the summary judgment does not specify the grounds upon which it was granted, then we will affirm the judgment so long as any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

A trial court may properly grant a traditional motion for summary judgment if the movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the traditional motion for summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence*, 164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively disprove at least one element of the plaintiff's cause of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

## DISCUSSION

In their first issue, appellants contend the trial court erred in granting summary judgment in favor of State Farm because State Farm failed to prove as a matter of law that it owed no duty to appellants.[1]

In this suit, appellants assert both negligence and strict products liability claims. However, a close reading of appellants' live pleading reveals both claims are based on State Farm's alleged failure to inspect and warn subsequent purchasers of the salvage-titled Honda Accord's safety and suitability for rebuilding, reconditioning, or repair.[2] Because appellants' claims of negligence and strict products liability closely mirror one another, we will analyze them together in determining whether a duty, i.e. duty to inspect or warn, exists.

Whether a duty to warn of the dangers of a product exists in a negligent failure to warn claim or strict products liability claim is a question of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997); *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 880 (Tex. App.—Fort Worth 2002, no pet.). Specifically, in a negligence suit, "[b]efore there can be a cause of action for negligence, the court must determine that the defendant had a recognized legal duty or obligation to the plaintiff." *Hanus*, 71 S.W.3d 880. "If there is no duty, there can be no negligence liability." *Id*. (citing *Thepar v. Zezulka,* 994 S.W.2d 635, 637 (Tex. 1999)). The law of negligence does not require warnings for obvious risks or risks within the ordinary consumer's common knowledge. *Hanus*, 71 S.W.3d 880.

---

[1] Appellants incorrectly describe State Farm's claim of "no duty" as an affirmative defense. However, the absence of a legal duty is not an affirmative defense. Rather, whether a legal duty exists is an element of a plaintiff's negligence claim. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

[2] Appellants argue the Certificate of Title Act does not exempt or immunize an insurance company selling used cars from liability merely because the seller complied with the Act in obtaining a certificate of title. Appellants' argument depends on whether a duty to inspect or warn beyond that set out by the Act existed, and does not institute an independent, separate assertion.

Similarly, in a marketing defect suit, as is the case here, in which the defendant is accused of failing to provide adequate warnings to establish a product as unreasonably dangerous, the product must present a threat of harm that "would elude the common perception of the product." *Id.* (citing *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387-88 (Tex. 1991)). A defendant has a duty to warn if it knows or should know of the product's potential harm to a user. *Am. Tobacco*, 951 S.W.2d at 426; *Hanus*, 71 S.W.3d 880. Conversely, a defendant has no duty to warn of obvious risks because the readily apparent danger of the product serves the same function as a warning. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *Hanus*, 71 S.W.3d 880. Whether a danger is considered to be readily apparent is an objective question for the trial court. *See id*. Additionally, no duty to warn exists for risks associated with a product that are matters "'within the ordinary knowledge common to the community.'" *Hanus*, 71 S.W.3d 880 (quoting *Joseph E. Seagram*, 814 S.W.2d at 388).

Section 501.092 of the Texas Transportation Code authorizes an insurance company to sell a car with a salvage title to a salvage car dealer in a casual sale at auction. *See* TEX. TRANSP. CODE ANN. § 501.092(d) (Vernon 2009). Section 501.092 requires an insurance company to obtain a salvage title certificate before the sale, and the insurance company may not sell the vehicle until the Texas Transportation Department has issued such a certificate. *See id.* § 501.092(b)-(c). In this case, State Farm fully complied with the regulations set out in chapter 501 of the Code and sold the car in its visibly unrepaired condition in accordance with auction procedures. *See id.* § 501.092 (specifying insurance company may sell salvage motor vehicle to salvage vehicle dealer in casual sale at auction). There is nothing in the record to indicate State Farm did not comply with chapter 501; in fact, the parties stipulated that State Farm "fully" complied with chapter 501. By fully

complying with the regulations set out in chapter 501 of the Code and obtaining a salvage title certificate, State Farm complied with any duty it had to inspect or warn subsequent purchasers of the car's salvage condition. *See id.* (specifying insurance company shall apply for a salvage motor vehicle certificate of title when it acquires ownership of a later model salvage motor vehicle as payment of claim). Chapter 501 does not impose, nor will we impose on insurers selling a salvage motor vehicle with its accompanying salvage motor vehicle certificate pursuant to chapter 501, an additional duty to inspect or warn subsequent purchasers. *See id*. Accordingly, State Farm, after fully complying with the regulatory requirements associated with selling salvage-titled cars, had no further duty to inspect or warn subsequent purchasers of the obvious dangers associated with the Honda.

Moreover, the risks associated with the salvage-titled car were obvious when the car was sold to El Nicoya Auto and Parts and when Cedillo purchased the car with its certificate of title marked "Rebuilt Salvage." Upon a review of the summary judgment evidence, the car was sold in its visibly unrepaired condition with a salvage title certificate marked "Rebuilt Salvage." During the auction, the salvage status of the car was fully disclosed to the buyer, El Nicoya Auto and Parts, and the salvage status of the car was made known to Cedillo when she purchased the car with its certificate marked "Rebuilt Salvage."

Accordingly, we agree with State Farm that, as a matter of law, it fully complied with the duty imposed by chapter 501 of the Code with regard to subsequent purchasers. State Farm had no duty to inspect or warn of a salvage-titled car's safety and suitability for rebuilding, reconditioning, or repair when, as here, the car was sold in an auto auction in its visibly unrepaired condition with salvage-title. We have found no support for appellants' claim of a duty to inspect or warn of a

salvage-titled car's safety and suitability for rebuilding, reconditioning, or repair beyond that imposed by the Texas Transportation Code. And, appellants have not cited any authority imposing an additional duty. Although appellants ask us to create a duty beyond that established by the legislature, we decline to do so. *See e.g., Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412 (Tex. 2009) (declining to create new duty requiring employers to train employees about fatigue); *Owens v. Comerica Bank*, 229 S.W.3d 544, 548 (Tex. App.—Dallas 2007 no pet.) (declining to create broad duty on banks to general public, who are not customers of bank); *Felts v. Bluebonnet Elec. Co-op., Inc.*, 972 S.W.2d 166, 169 (Tex. App.—Austin 1998 no pet.) (declining to create broader duty on easement owner to maintain trees outside easement area for protecting general public traveling county road).

Accordingly, we hold State Farm effectively negated the existence of duty in this case. In the absence of a legal duty, there in turn, is no viable negligence or strict liability claim. *See Hanus*, 71 S.W.3d 880. Having negated one element of appellants' claims for negligence and strict liability, State Farm was entitled to judgment as a matter of law. We therefore overrule appellants' first issue, and we find it unnecessary to address the remaining issues.

## Conclusion

Having determined that State Farm owed no duty to inspect or warn of a salvage-titled car's safety and suitability for rebuilding, reconditioning, or repair beyond that set out in chapter 501 of the Texas Transportation Code, we hold the trial court did not err in granting State Farm's motion for summary judgment on all of appellants' claims. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice