FIRESTONE TIRE & RUBBER
CO., Appellant,

v.

Robert BATTLE, Appellee.

No. 01–87–000241–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 7, 1988.

Michael S. Goldberg, Houston, John C. Niemeyer, Oklahoma City, for appellant.

John Roberson, Graham Hill, Ron Franklin, Houston, for Robert Battle.

Otway B. Denny, Jr., Sarah B. Duncan, Houston, for General Motors Corp. and Chuck Davis Chevrolet, Inc.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

EVANS, Chief Justice.

This is a products liability case based on a tire manufacturer's alleged failure to adequately warn of the dangers associated with centrifugal force tire explosions.

On the day of the accident, Odell Dixon was backing his Chevrolet Camaro automobile out of his driveway when the right rear wheel went off the driveway and into a culvert. The automobile was resting on its rear axle with its left rear wheel on the driveway and the right rear wheel suspended over the culvert. Dixon flagged down a passing garbage truck, and three members of its crew, including the appellee, Robert Battle, volunteered to help Dixon move his automobile. Dixon got into the driver's seat and started to accelerate the engine while the three men at the rear of the vehicle tried to lift and push the car back onto the driveway. Within a matter of seconds, the right rear tire exploded, shattering the front windshield and ripping out the right rear fender of Dixon's car. Battle, who had placed his hands under the right rear wheel well, was knocked several feet backward and suffered severe injuries to his left wrist and forearm. He was immediately taken to a hospital, where the physicians decided to attempt reconstructive surgery rather than amputate. After nine operations, Battle was left with a permanently disabled and disfigured hand.

Battle sued the tire manufacturer, Firestone Tire & Rubber Company; the automobile driver, Odell Dixon; the automobile manufacturer, General Motors Corporation; and the automobile dealer-seller, Chuck Davis Chevrolet, Inc. Battle non-suited Dixon and General Motors before trial and proceeded to trial against the remaining

defendants, Firestone and Chuck Davis. Battle presented evidence only with respect to his product liability claim against Firestone, and at the conclusion of the evidence, the trial court rendered a take-nothing judgment in favor of Chuck Davis. The jury answered all liability issues and the actual damage issues in favor of Battle. On the jury's verdict, the trial court entered judgment against Firestone for the sum of $579,000, plus prejudgment interest. The jury did not find that Firestone's actions constituted "conscious indifference," and it made no award of exemplary damages.

In nine points of error, Firestone contends that the trial court committed reversible error in admitting certain testimony into evidence, in refusing to submit certain special issues, and in exerting undue pressure on the jury to reach a verdict. Firestone also challenges the legal and factual sufficiency of the evidence to support the jury's findings (1) that Firestone's failure to warn was a producing cause of the occurrence, (2) that such failure rendered the tire unreasonably dangerous, and (3) that the appellee sustained damages in the amount of $579,000.

One of the principal issues raised at trial was whether Firestone's tire disintegrated as a result of a "centrifugal force explosion" or as a result of some other cause. According to the expert testimony, a centrifugal force explosion occurs when a revolving mass spins so rapidly that centrifugal force causes the matter to explode. It is a "very basic force" in a rotating body. The force "tends to move things away from the center of rotation" so that when an object spins at very high speeds, "there comes a point when it will disintegrate." This centrifugal force phenomenon, sometimes called "spin break," can occur when there is a rapid acceleration of a free-spinning automobile tire. Thus, on a car equipped with an automatic transmission with a slip differential, when one wheel is suspended so that the wheel is "free-spinning," and the other wheel is held stationary by the weight of the car, the differential may direct full force to the free-spinning wheel. When the engine is accelerated so that the velocity of the spinning wheel is increased, the wheel may turn at a speed twice that registered on the speedometer. Under such circumstances, it is possible for the free-spinning tire, within a matter of seconds, to reach such a speed that centrifugal force causes it to explode. According to one witness' estimate, Firestone's tire exploded within 5 to 10 seconds of the acceleration of the automobile's engine.

■ Firestone first contends that the trial court abused its discretion in admitting the testimony of Tammy Newbolt, whom Battle called as a witness to testify about a similar "spin break" experience involving a Firestone tire. Ms. Newbolt testified that about a year before Battle's accident, she had been a passenger in an automobile that slid off the road and onto some wet grass. The driver could not get traction because the right rear tire, manufactured by Firestone, was spinning on the wet grass. Newbolt got out of the car and tried to push, while the driver accelerated the engine. The right rear tire suddenly exploded, and Newbolt, who was standing about two feet away, sustained serious injuries to her face, chest, and leg. She ultimately filed suit against Firestone to recover damages for her injuries.

Although Firestone concedes that Newbolt's accident resulted from a "spin break" explosion, it argues that the probative value of her testimony was substantially outweighed by the unfair prejudice and misleading nature of her testimony. In effect, Firestone claims that Newbolt's testimony so colored and clouded the jury's thinking that they were led to disregard the "obvious flaws" in Battle's theory of the case. Firestone argues that the trial court's admission of Newbolt's testimony was erroneous and that this error was so harmful that reversal is required.

Firestone contends that Newbolt's testimony was unnecessary because (1) her accident was included on a list of five previous

accidents known to Firestone and introduced into evidence by Battle after Newbolt testified and (2) Firestone had admitted that it knew of the existence of her accident and other prior "spin break" accidents.

We overrule Firestone's contention. Newbolt's testimony was relevant to the question of whether a spin break explosion would necessarily be preceded by loud noise and vibration and could only occur if the tire was spinning between 250 and 300 miles per hour. Firestone's position, supported by expert testimony, was that prior to a spin break explosion there would necessarily be an extreme "ear shattering" roar and intense shaking of the vehicle. Firestone's expert testimony also tended to show that an explosion would not occur unless the tire was spinning at an extremely high speed, between 250 and 300 miles per hour. Battle's witnesses at the scene of the accident testified that these events did not occur. This testimony tended to support Firestone's theory that the explosion could only have been the result of a spark of static electricity, which ignited some gas or vapor within the tire. But Newbolt testified that before the explosion of the tire that caused her injury, the tire was not spinning at excessive speeds and that she had not heard any extreme noise or observed severe vibrations in the car. Thus, Newbolt's testimony was most important to Battle's case because Firestone admitted that Newbolt's accident was definitely the result of a "spin break" explosion. Her testimony also tended to support Battle's witnesses' eyewitness testimony that the explosion occurred in a matter of seconds and was not preceded by extreme noise or vibrations, and in that respect, her testimony was also relevant on the issue of whether Battle was contributorily negligent in standing near the spinning tire just prior to the explosion.

Newbolt's testimony was also probative of the fact that Firestone knew about the dangerous condition of "spin break," and on the issue of whether Firestone gave its users adequate warning of such danger. Although Newbolt was questioned extensively about her injuries, we conclude that the nature of the accident and the severity of her injuries were circumstances that the jury was entitled to consider in deciding whether Firestone had failed to take appropriate steps to warn a tire user that the product could be unreasonably dangerous.

Evidence of a prior accident is admissible to evaluate the magnitude of the risk of the product hazard. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir.1986). Battle was entitled to prove the circumstances of Newbolt's accident, including the severity of her injury, so that the jury could assess the seriousness of the danger in determining whether Firestone had failed to issue an adequate warning of such danger. The evidence was also admissible on the issue of Firestone's alleged conscious indifference in failing to issue an adequate warning to users of its products after all the facts were known.

Battle further contends, and we agree, that Newbolt's testimony was relevant on the issue of whether Firestone was guilty of conscious indifference in its failure to issue warnings of the known danger. Evidence of a prior accident is usually admissible to prove knowledge of a dangerous condition, which may serve as a basis for an award of exemplary damages. *See Soden v. Freightliner Corp.*, 714 F.2d 498, 508 (5th Cir.1983).

We hold that the trial court did not abuse its discretion in admitting Newbolt's testimony and in deciding that the relevancy of such evidence was not substantially outweighed by the risk of unfair prejudice and confusion. Tex.R.Evid. 403.

■ We further hold that the record does not demonstrate reversible error on the part of Battle in arguing Newbolt's testimony before the jury, and we conclude that any such complaint was waived by failure to object at time of trial. *See* Tex. R.Evid. 103(a)(1) and (2); *see also Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840–41 (Tex.1979).

We accordingly overrule Firestone's first point of error.

In its second point of error, Firestone asserts that the trial court committed error in refusing to submit issues on Firestone's co-defendants as a basis for apportionment of the damages.

Firestone did not file any cross-claims against the other defendants in the case, and two of the defendants, General Motors and Odell Dixon, were non-suited by Firestone before trial started. The plaintiff, Battle, did not submit any special issues regarding the liability of the remaining defendant, Chuck Davis Chevrolet.

■ Firestone argues that its answer to Battle's petition raises the issue of comparative apportionment with the co-defendant, Chuck Davis Chevrolet, and in support of that contention, Firestone cites *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984). In *Duncan,* the defendant's answer raised the issue of liability of one of the co-plaintiffs, not that of a co-defendant. We conclude that *Duncan* is not on point.

■ Firestone also contends that a comparative apportionment issue should have been submitted against defendants General Motors and Odell Dixon because they were "settling" parties. In support of this contention, Firestone cites *Acord v. General Motors Corp.*, 669 S.W.2d 111 (Tex.1984). We also overrule this contention. There is no evidence that the defendants, General Motors and Dixon, were non-suited because of a settlement reached with the plaintiff. Although a settlement does not have to include a payment of money, there is no indication that the non-suit was based on any settlement with the plaintiff. *See Rose v. Pfister*, 607 S.W.2d 587 (Tex.Civ.App.— Houston [1st Dist.] 1980, no writ).

We thus hold that there was no error in the trial court's denial of special issues on Firestone's co-defendants that would serve as a basis for apportionment of damages. We accordingly overrule Firestone's second point of error.

We next consider Firestone's points of error three and five in which it asserts that there is no evidence to support the jury's findings that its failure to warn was a producing cause of the accident and that such failure rendered the tire unreasonably dangerous.

In reviewing these "no evidence" points, we will consider only the evidence and the inferences therefrom that tend to support the finding and will disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is direct or circumstantial evidence to support the findings, we must overrule these contentions. *Robert Parker's Truck & Trailer Repair, Inc. v. Speer*, 722 S.W. 2d 45, 47 (Tex.App.—Houston [1st Dist.] 1986, no writ).

The testimony of Battle's first witness, Tammy Newbolt, constituted some evidence, albeit circumstantial, from which the jury could have inferred that the explosion of Firestone's tire was the result of the spin-break phenomenon and that Firestone did not take any steps to warn the public of this danger even though it knew of the hazard.

Battle offered the testimony of Dr. Raymond Johnston, Professor of Industrial Safety at Texas A & M University, who gave his expert opinion that the spin-break phenomenon was a hidden hazard in Firestone's tire that could cause serious injury and that even though Firestone knew of this hazard, it failed to warn the public of the danger. Dr. Johnston also stated his opinion that Firestone's failure to warn was a contributing cause of Battle's injury.

Battle also called a "warnings expert," Donald Porterfield, who had been retained by Firestone after Battle's accident to evaluate warnings on the spin-break phenomenon. Porterfield testified that he had determined that the public lacked important safety information about the hazard and that he had promulgated a pamphlet for Firestone discussing the dangers of explosions of free-spinning tires. Porterfield recommended to Firestone that the pamph-

let be widely disseminated in order to reduce or eliminate spin-break accidents.

■■■ We conclude that the evidence is legally sufficient to support the jury's findings that Firestone's failure to warn was a producing cause of the accident and that such failure rendered Firestone's tire unreasonably dangerous. We also hold that this evidence was legally sufficient to support the jury's finding that Firestone's failure to warn was a producing cause of Battle's injuries.

Firestone contends that it had no duty to warn of the hidden danger because an adequate warning was contained in Dixon's automobile owner's manual. We reject this contention. In certain situations, a manufacturer may depend on an intermediary to communicate a warning to the ultimate user of a product. But the mere presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product; in every such case, the issue is whether the original manufacturer has a reasonable assurance that its warning will reach those endangered by the use of the product. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591 (Tex. 1986). Thus, to avoid liability, a manufacturer must affirmatively prove that the warning given by a third party provided the user with actual, adequate, and specific knowledge of the hazard. *See Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330, 340 (5th Cir.1984); *compare Stevens v. Cessna Aircraft Co.,* 115 Cal.App.3d 431, 170 Cal.Rptr. 925 (1981).

The adequacy of the warning given in the automobile owner's manual was a question of fact for the jury's determination. *Alm,* 717 S.W.2d at 592; *Munoz v. Gulf Oil Co.,* 732 S.W.2d 62, 65 (Tex.App.— Houston [14th Dist.] 1987, writ ref'd n.r.e.). Battle's expert witness, Dr. Johnston, testified that the warnings in the automobile owner's manual were "woefully inadequate" and did not effectively communicate information about the hazard to the population as a whole. Dr. Johnston's analysis of the warning in the automobile owner's manual was supported by the testimony of the warning expert, Porterfield, who had prepared a detailed pamphlet describing the hazard for immediate dissemination on a wide-spread basis.

The jury was not bound by Firestone's evidence regarding the adequacy of the warning in the owner's manual, and we hold that Firestone did not conclusively establish that it had no duty to warn of the hidden danger because of the warning contained in the owner's manual.

Although Firestone's two points challenging the sufficiency of the evidence are phrased as "no evidence" points, Firestone argues, under both points, that the jury's findings are against the great weight and preponderance of the evidence. Battle meets these factual sufficiency challenges in its reply brief, and we will consider the points as raising factual sufficiency challenges. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633 (Tex.1986). In reviewing these factual sufficiency contentions, we consider and weigh all the evidence in the record to determine whether the jury's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■■ Firestone argues several reasons to support its contention that the jury's findings are against the great weight and preponderance of the evidence. Firestone again raises the point that the automobile owners' manuals and industry-wide tire publications were the logical place for warnings to the ultimate user because the possibility of a centrifugal force explosion depended not on a particular tire but on the configuration of the automobile on which the tire was placed. As we have stated, the jury was entitled to weigh and consider this evidence but was not bound to accept it in deciding whether an adequate warning was given. This question required a factual determination by the jury, and we cannot say that its finding is against the great weight and preponderance of the evidence.

We hold that the jury's findings that Firestone failed to give an adequate warning of the hazard and that such failure rendered its product unreasonably dangerous as marketed are not against the great weight and preponderance of the evidence.

Firestone next argues that the great weight of the evidence established that a centrifugal force explosion would not occur unless the wheel was spinning at an "enormously high speed." Firestone points to the testimony of Mr. James Gardner, one of its engineers with extensive experience in tire development and analysis, who testified that before a spinning automobile tire would disintegrate because of centrifugal force, the tire's speed would have to approach a velocity of 300 miles per hour. Gardner also testified that when a wheel reached a speed between 200 to 220 miles per hour, the automobile itself would give off a warning in the form of a loud, roaring, almost "ear-shattering" noise and would be accompanied by severe vibrations. Thus, Gardner concluded, even those who would not know the precise mechanics of the phenomenon would recognize the danger from the loud noise and vibrations.

Finally, Firestone contends that the only "substantial evidence" showed that the cause of the accident was gas or vapor rather than a centrifugal force explosion. Firestone points to the testimony of the driver, Odell Dixon, who said that the automobile was "operating slowly" at the time of the accident and that when he picked up the tire after the accident, he noticed a black, powdery, soot-like substance on the inside of the tire. Firestone's expert witness, Gardner, opined that if the automobile was in fact being operated by Dixon at a modest speed, the only plausible explanation for the explosion was gas or vapor. He testified that such an explosion could occur if the air in the tire became contaminated with a flammable substance that was ignited with a spark from a static discharge, that a static discharge was more likely to occur with an ungrounded, free-spinning tire, and that the physical evidence described by Dixon was consistent with a gas or vapor explosion.

Although Firestone presented persuasive evidence in support of its version of the occurrence, it was for the jury to weigh and consider the testimony, including the conclusions given by the expert witnesses. As a reviewing court, it is not our prerogative to "re-weigh the evidence," or to set aside the jury's findings merely because we might feel that a different result is more reasonable. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985).

We further hold that the jury's finding that Firestone's failure to warn was a producing cause of Battle's injuries is not against the great weight and preponderance of the evidence. Dr. Johnston testified that if Battle had been advised about the danger, he would not have been standing where he was at the time of the explosion. He concluded that Firestone's failure to warn Battle of the hazard was a contributing cause of Battle's injuries. Dr. Johnston's special experience and training gave him sufficient qualifications to assess the probable effect of a lack of an effective warning on Battle's behavior. Dr. Johnston testified that he was the head of the Human Factors Engineering Program at Texas A & M University, and that as a specialist in this field, he had studied the effect that product design and use had on human characteristics and behavior. This professional background, Dr. Johnston testified, enabled him to give his expert opinion that Firestone's failure to issue an adequate warning was a contributing cause of Battle's injuries. The jury was also entitled to infer from the circumstances in the case, i.e., the manner in which the accident occurred, that the absence of an adequate warning was a producing cause of Battle's injuries. *See Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex.1986); *Howard v. Faberge, Inc.*, 679 S.W.2d 644, 650 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

We accordingly overrule Firestone's third and fifth points of error.

■ We next consider Firestone's fourth point of error in which it asserts that the trial court committed reversible error in refusing to submit its requested issue on whether the tire exploded due to centrifugal force. Firestone argues that this was an essential element of Battle's case and that Battle failed to establish by undisputed evidence that the cause of the tire's explosion was due to the centrifugal force.

We overrule this point because Firestone's requested issue merely inquired about an evidentiary matter, not an ultimate issue in the case. The question of whether the explosion was due to centrifugal force was inherent in the submitted, controlling issue on producing cause. When the jury answered the producing cause issue, it necessarily found that the explosion was due to centrifugal force. Thus, the trial court's refusal to submit other shades or phases of the same question was not error. *See Texas & N.O.R. Co. v. Sturgeon,* 142 Tex. 222, 177 S.W.2d 264, 265 (1944); *City of Austin v. Selter,* 415 S.W.2d 489 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.).

■ Next we consider Firestone's point of error number six in which it contends that the trial court committed reversible error by submitting a supplemental charge to the jury that was unduly coercive.

After the jury had deliberated for about 26 hours, the jurors informed the court that, while they had successfully answered all of the issues regarding liability, they were unable to agree on three of the eleven elements of damages. The court then orally delivered the following supplemental charge to the jury:

> The Court: Ladies and gentlemen of the jury, the Court is in possession of the last communication that you have here. It addresses what appears to be a hopeless deadlock.
>
> This case, ladies and gentlemen, has been tried, at great expense to the taxpayers

of this County, and great expense to yourselves. The portions of the verdict that you have yet to address, it appears to this Court that rather than release you, that the better course of action would take—you are to be commended because frankly, in 33 years on this Bench, I have seen very few juries as dedicated. Thirty–three years at the Bench and bar. I haven't been a Judge for 33 years, ladies and gentlemen.

> I think it's frankly incumbent upon you good people to search your conscience and to think about it. I'm not asking you to back off from your posture, but certainly reconsider the fact that the matters that we were eight days in trial and you have been in deliberation in, I think I calculated 26 hours, that you have been really taking this Charge like Trojans. I wish to commend you for it, but I am afraid I must insist that you come back Monday morning at 9:00 o'clock, refreshed and ready to continue your deliberations.

Firestone complains of the language used by the court in the supplemental charge, particularly the court's reference to "the portions of the verdict that you have yet to address...." Firestone argues that this comment suggested that the unresolved issues were not of sufficient importance to warrant a deadlock. Firestone also complains of a later remark made by the judge, when one of the jurors was reported absent due to illness, that the jurors were "very close to reaching a verdict in this matter...." Firestone contends that, considered together, these statements can only be construed as minimizing the importance of the damage issues.

Viewing the court's charge in the light of the record before us, we find no basis for the contention that the court's supplemental charge was unduly coercive. The court did not make any express or implied threat that the jurors would be required to continue their deliberations for an unreasonable length of time, nor did the court suggest

that any of the jurors should compromise their positions in any way. Indeed, the court expressly instructed the jurors that they were not being asked to "back off" from their positions. Thus, we hold that no reversible error is demonstrated. *Stevens v. Travelers Ins. Co.*, 563 S.W.2d 223, 229 (Tex.1978).

We now move to Firestone's point of error number seven in which it contends that the damage award is not supported by the evidence and is so excessive that the judgment must be reversed.

■■■ The jury awarded Battle damages totaling $579,000, which included $240,000 for physical pain and mental anguish, $110,000 for past and future disfigurement, $142,500 for past and future physical impairment, and $70,000 for future loss of earnings.

In reviewing this complaint, we must keep in mind that the amount of damages properly awarded for personal injuries, such as pain and suffering, disfigurement, and physical impairment, are primarily and peculiarly within the province of the jury. *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 708 (Tex.1970); *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 640 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In determining whether damages are excessive, courts of appeals should employ the same test as for any factual sufficiency question. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). Thus, this Court is required to examine all the evidence in the record to determine whether sufficient evidence supports the damage award. *Id.*

Battle was 45 years old at the time of the accident. As a result of the explosion, he sustained severe fractures of the bones in his right hand and in his left wrist and forearm. The bones in his left wrist were severely crushed, and those that remained had to be set in place with steel plates.

Dr. William Riley, a board certified plastic and reconstructive surgeon who treated Battle in the emergency room, described the injury to Battle's left hand as "overwhelmingly severe." He wondered whether the hand could survive reconstruction and considered amputation. Internally, the injury was so severe that it was difficult to identify the various anatomical structures. The tendons were badly damaged; many were difficult to locate; and some had actually been destroyed.

Battle was first hospitalized for two months, and during the six months following the accident, he underwent a total of nine surgical procedures. The first operation required some seven hours just to clean the area and stabilize the broken bones with wire. The second and third operations were skin grafts to provide temporary skin covering for the open wounds. After those grafts had healed, additional surgery was performed to remove the securing pins. Finally, there were a series of "transfer operations" during which skin and bone were transferred from Battle's hip to his injured hand. During these procedures, the back of Battle's hand was stitched to his groin area until the blood supply from his hand grew into the new bone and skin.

There was medical testimony that Battle's injury left him with a "severe limitation of the motion in the left upper hand and arm." Battle had very little freedom of movement in his hand and virtually no grip strength. The joints in his hand are so stiff that he cannot use it. Dr. Riley recommended that his wrist be fused in a permanent position, and he opined that the odds are heavily against Battle ever regaining use of the hand.

Battle wears a glove on his left hand to hide the scars, and there was medical testimony that this scarring and disfigurement is permanent. The jury viewed Battle's hand without the glove, and an X–ray of the scarred and disfigured hand is in the record.

We hold that there is ample evidence to support the jury's awards and that there is no basis for Firestone's complaint that the awards are so excessive that a reversal and

remand is required. We overrule the seventh point of error.

For the reasons previously stated, we also overrule the eighth and ninth points of error in which Firestone contends that the cumulative effect of the trial court's rulings require a reversal of the judgment and that the trial court also erred in overruling Firestone's motion for new trial.

The judgment of the trial court is affirmed.