Donell COLEMAN and Sylvia Coleman, Individually and as Next Friend of her Minor Children, Donell Coleman, Jr., Monique Coleman, Denzell Coleman, and Dominique Coleman, Appellants,

v.

CINTAS SALES CORPORATION d/b/a Cintas Corporation, Appellee.

No. 04–02–00116–CV.

Court of Appeals of Texas, San Antonio.

Dec. 18, 2002.

Jason M. Ryan, Timothy E. Gehl, Baker Botts L.L.P., Houston, Steven B. Fisher, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, for Appellant.

Kelly J. Friedman, Randy L. Fairless, L.L.P., Sugarland, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by: SANDEE BRYAN MARION, Justice.

The underlying strict liability lawsuit was brought by the appellants, Donell Coleman and Sylvia Coleman, individually and on behalf of their four minor children, for injuries suffered by Donell Coleman when his work uniform caught fire. The uniform was supplied by Cintas Sales Corporation ("Cintas") to Coleman's employer, The Quarry at Lincoln Heights Golf Club ("the Quarry"). Cintas moved for summary judgment on the Colemans' marketing defect claim on two defensive grounds, learned intermediary and common knowledge. The trial court granted the motion, without stating its grounds. We hold that Cintas established its entitlement to summary judgment on its common knowledge defense; therefore, we affirm the trial court's judgment.

## BACKGROUND

Coleman is a grounds keeper for the Quarry, and his job includes raking sand traps, removing weeds, and operating lawn mowers. While at work, Coleman was required to wear a uniform supplied to him by the Quarry. The uniform was made of sixty-five percent polyester and thirty-five percent cotton and was not flame-retardant. Other than appearance, the uniform serves no function.

The accident occurred on the Quarry's premises, during the workday, while the maintenance crew prepared a barbecued-steak lunch. Coleman volunteered to cook the steaks over a charcoal and lighter fluid-fueled barbecue pit. Coleman positioned the barbecue pit in front of the Quarry's maintenance facility, and moved a picnic bench alongside where he placed various condiments, cooking utensils, and the steaks. He filled the pit with charcoal briquettes and coated them with lighter fluid. After the coals had soaked for approximately six minutes, Coleman lit them without incident. The fire caught and moved across the coals. After approximately seven minutes, Coleman spread the coals, placed a grill on top of the pit, and set the first and second steaks on top of the grill. When Coleman reached to the picnic bench for the third steak, he felt a gust of wind at his face and saw a burst of flame out of the corner of his eye. He stepped back, raising his hand to protect his face. When Coleman realized his shirt had caught fire, he brought his arm to his mid-section in an attempt to smother the fire. Almost immediately, the entire shirt was in flames, and because portions of the shirt melted or fused to his body, he could not remove the shirt to escape the flames.

Coleman ran to the nearby lawn and proceeded to "stop, drop, and roll." Despite these efforts, the shirt continued to burn. Each time Coleman thought the fire was extinguished, he heard what he called a "poof" and the shirt reignited. Coleman then ran toward his supervisor's office for help, where he was directed to a changing room with a cement floor. Using other uniforms, Coleman's supervisor extin-

guished the flames after about one minute, and called the paramedics. Coleman suffered injuries, which resulted in $300,000 in medical expenses and lost wages.

Cintas filed its first motion for summary judgment on the Colemans' design defect claim, which the trial court granted. On appeal, Cintas raised for the first time its assertion that it was entitled to summary judgment on the Colemans' marketing defect claim. A panel of this court affirmed the summary judgment on the Colemans' design defect claim, but reversed the judgment on the Colemans' marketing defect claim. *See Coleman v. Cintas Sales Corp.,* 40 S.W.3d 544 (Tex.App.-San Antonio 2001, pet. denied). Cintas then filed a second motion for summary judgment on the Colemans' marketing defect claim, which the trial court granted and is the subject of this appeal.

## COMMON KNOWLEDGE DEFENSE

■ Manufacturers and suppliers have a duty to inform users about hazards associated with the use of their products. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591 (Tex.1986). However, there is no duty to warn of dangers that are of common knowledge to the consuming public. *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997); *USX Corp. v. Salinas,* 818 S.W.2d 473, 483 (Tex.App.-San Antonio 1991, writ denied). The common knowledge defense is "an extraordinary defense" and it "connotes a general societal understanding of the risks inherent in a specific product or class of products." *Grinnell,* 951 S.W.2d at 427. A matter of common knowledge is information known by the public generally based upon indisputable facts. *Brune v. Brown Forman Corp.,* 758 S.W.2d 827, 831 (Tex.App.-Corpus Christi 1988, writ denied). The more disputable a fact may be, the less likely it will belong to that narrow

set of facts judicially recognized as common knowledge. *Id.*

■ As the party asserting the defense, Cintas had the burden of establishing that the dangers attributable to its non-flame retardant uniforms were a matter of common knowledge when Coleman began wearing the uniform. *Grinnell,* 951 S.W.2d at 428. Cintas contends it established its entitlement to summary judgment because it is common knowledge that clothes will catch fire when exposed to a flame; therefore, it had no duty to warn Coleman of this danger. Coleman, on the other hand, argues that the speed and manner in which his uniform would burn and the difficulty of extinguishing the fire once ignited are not common knowledge.

We recognize that the characteristics of mass-marketed, synthetic wearing apparel may not be understood by the average consumer. However, we hold as a matter of law that it is commonly known that non-flame retardant clothing will burn once exposed to an open flame, especially flame arising from a charcoal and lighter fluid-fueled barbecue pit, and the wearer of the clothes may be severely injured. *See Miller v. Lee Apparel Co., Inc.,* 19 Kan.App.2d 1015, 881 P.2d 576, 588, 588 (Ct.App.1994) ("It is obvious that when clothes are exposed to flame, particularly the intense flame of a carburetor backfire, the garment may catch on fire. Under these circumstances, Lee Apparel had no duty to warn of this obvious danger and had no duty to warn ... that the lining of the coveralls would ignite when exposed to a flame and be difficult to extinguish once ignited."); *cf. Robins v. The Kroger Co.,* 982 S.W.2d 156, 161 (Tex.App.-Houston [1st Dist.] 1998) (danger associated with fire produced from a cigarette lighter is an obvious risk within the ordinary knowledge of the community), *pet. denied,* 5 S.W.3d 221 (Tex.1999); *Malone v. Hendrick Med.*

*Center,* 846 S.W.2d 951, 954 (Tex.App.-Eastland 1993, writ denied) (act of burning someone with water that is too hot and the resulting pain are matters plainly within the common knowledge of laymen). Accordingly, Cintas had no duty to warn Coleman of this danger.

## CONCLUSION

We conclude that Cintas established its entitlement to summary judgment on its common knowledge defense; therefore, we do not address whether Cintas was entitled to summary judgment on its learned intermediary defense. We affirm the trial court's judgment.

Dissenting opinion by: ALMA L. LÓPEZ, Justice.

Dissenting opinion by: ALMA L. LÓPEZ, Justice.

I believe Cintas failed to establish that there is no genuine issue of material fact on its common knowledge defense. Therefore, I respectfully dissent from the majority's opinion. In addition, because Cintas failed to provide evidence in support of its defense of learned intermediary, I would reverse the judgment and remand the matter to the trial court.

## COMMON KNOWLEDGE

Cintas moved for summary judgment on the grounds that the risk of danger associated with its uniform was within the ordinary knowledge common to the community. Cintas contends that it is common knowledge that clothes will catch fire when exposed to a flame; therefore, it had no duty to warn Coleman of this danger. Coleman argues that the risk of danger is not that the uniform would burn; but rather, the speed and manner in which it would burn and the difficulty of extinguishing the fire once ignited. Therefore, there is a genuine issue of material fact regarding the risk of danger from quick and complete ignition. I agree.

Common knowledge has generally been defined as when a jury can find negligence or not without a showing, by proof or otherwise, of a matter that is so esoteric that people of common judgment and experience can form a valid judgment as to whether the conduct of a party is reasonable. *See* 3 FOWLER V. HARPER, FLEMING JAMES, JR., AND OSCAR S. GRAY, *The Law of Torts,* § 17.1 (2d Ed.1986). Under Texas law, a supplier has no duty to warn of dangers that are common knowledge to the public or generally known to the consuming public. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997); *USX Corp. v. Salinas,* 818 S.W.2d 473, 483 (Tex.App.—San Antonio 1991, writ denied). The rationale behind this limitation is that no recovery right exists when the party to be warned is already aware of the danger. *USX Corp.,* 818 S.W.2d at 483. Common knowledge "connotes a general societal understanding of the risks inherent in a specific product or class of products." *Grinnell,* 951 S.W.2d at 427 (holding that general health dangers attributable to cigarettes are within common knowledge, but addictive qualities of cigarettes was not). Common knowledge encompasses only those things that are so patently obvious and so well known to the community generally, that there can be no question or dispute concerning their existence. *Id.; Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 388 (Tex.1991) (holding that danger of developing disease of alcoholism from prolonged and excessive consumption of alcoholic beverages is within common knowledge). Whether knowledge is common to the community is an objective determination. *Grinnell,* 951 S.W.2d at 428; *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 383 (Tex.1995) (extending

common-knowledge rational to products with risks that are obvious to anyone who observes the product).

Cintas contends that the issue is simple: Is the fact that clothes will burn when exposed to a flame common knowledge? Such question, however, ignores undisputed evidence that Cintas' uniform ignited quickly, melted to Coleman's skin and continued to burn even after measures were taken to put out the flames. Our inquiry is whether the average person would recognize that his or her clothing might catch fire when exposed to a flame; and that once one's clothing caught fire, the fire would spread quickly and be difficult to extinguish. *Cf. Odak v. Arlington Memorial Hosp. Found.*, 934 S.W.2d 868, 873 (Tex.App.—Fort Worth 1996, writ denied) (emphasizing that issue was not whether the common knowledge of laymen knew that an infant should not get open wounds or chemical burns in a hospital nursery, but whether the proper use of an intravenous needle is within the common knowledge of laymen).

The standard for finding common knowledge as a matter of law is a strict one; therefore, common knowledge is an "extraordinary defense" in a strict liability case. *Grinnell*, 951 S.W.2d at 427; *Hanus v. Texas Utilities Co.*, 71 S.W.3d 874, 880 (Tex.App.—Fort Worth 2002, no pet.). In the instant matter, Cintas had to establish, as a matter of law, that the risks of a danger inherent in Coleman's uniform were so patently obvious and so well known to the community there could be no question or dispute concerning their existence. *Id.* In establishing this, the trial court was to be guided by judicial notice. *Seagram*, 814 S.W.2d at 388 n. 6; *Brune v. Brown Forman Corp.*, 758 S.W.2d 827, 830–31 (Tex.App.—Corpus Christi 1988, no writ).

Dr. Gordon H. Damant, an expert in the flammability of fabrics, opined as to the risk of dangers regarding Cintas' uniform. The uniform ... was readily flammable when exposed to heat or flame, was extremely difficult to extinguish once ignited and upon being heated would actually melt and stick to the user's body, thereby enhancing the injuries which would otherwise be sustained.

Damant found that the uniform had "inherent" but "non-obvious flammable characteristics." When exposed to flame the uniform would ignite in three seconds. The material also had "melting characteristics" not found in other materials. He concluded consumers are generally unaware of this melting characteristic. In particular, Damant noted that the synthetic fabric blend had a response to heat or flame that was "beyond the average consumer or wearer would reasonably expect or anticipate when confronted in a similar situation." While the evidence reflects that Cintas was aware of the risk that its uniform could catch on fire quickly, Damant opined that the consumer does not appreciate the risk and rapidness that certain fabrics could ignite when exposed to heat or flame. The evidence also shows that while Cintas was aware of the melting characteristics of the fabric, such knowledge was not common to the general consumer. In a marketing video, Cintas cited a 1989 study regarding workplace fires. The study concluded that most severe burns were caused by igniting non-flame retardant clothing and that those areas burn more severely than exposed skin. In agreeing with the study, Damant opined that "conventional thought among consumers is that exposed skin will be more severely burned than skin covered by clothing; that thought is generally not correct." Finally, while the evidence shows that Cintas was aware of the risk in extinguishing the uniform, Damant testified that con-

sumers do not know that certain fabrics are almost impossible to extinguish thereby negating any "stop, drop and roll" measures. The melting characteristics diminished the effectiveness of "stop, drop and roll." Damant opined that it is not commonly known by consumers that this may not work in certain circumstances. This evidence raises a genuine issue of material fact regarding the uniform's speed in igniting, its melting characteristics, and difficulty in extinguishment. *See Shears,* 911 S.W.2d at 383 (stating there can be a fact issue about whether consumers have a common knowledge of risks associated with a product).

## LEARNED INTERMEDIARY

Cintas also raised the defense of learned intermediary. Also known as the "sophisticated user defense," under this defense theory a manufacturer or supplier may fulfill its duty to warn, in certain situations, by relying on an intermediary to communicate a warning to the ultimate user of a product. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591 (Tex. 1986); *Humble Sand & Gravel, Inc. v. Gomez,* 48 S.W.3d 487, 494 (Tex.App.—Texarkana 2001, pet. granted); *Firestone Tire & Rubber Co. v. Battle,* 745 S.W.2d 909, 914 (Tex.App.—Houston [1st Dist.] 1988, writ denied). However, the mere presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product. *Alm,* 717 S.W.2d at 591; *Humble Sand,* 48 S.W.3d at 494; *Battle,* 745 S.W.2d at 914. The issue in every case is whether the original manufacturer has a reasonable assurance that its warning will reach those endangered by the use of its product. *Alm,* 717 S.W.2d at 591; *Battle,* 745 S.W.2d at 914. Thus, to avoid liability, a manufacturer must affirmatively prove that the warning given by a third party provided the user with actual, adequate, and specific knowledge of the hazard. *Battle,* 745 S.W.2d at 914. When the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user. *Alm,* 717 S.W.2d at 592.

In its motion for summary judgment, Cintas focused on whether its reliance on the Quarry was reasonable, arguing that the Quarry was a knowledgeable, sophisticated intermediary, and that the Quarry was the only entity with knowledge of its employees' needs and the risks they faced. Cintas, however, did not address whether its warning was adequate. Because Cintas failed to cite to evidence in support of an adequate warning, summary judgment in its favor on this defense was improper. Accordingly, I would reverse the judgment and remand this matter to the trial court.