**Opinion issued August 6, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01093-CV

————————————

**GARY SEIFRIED, Appellant**

**V.**

**THE HYGENIC CORPORATION, Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-23295A**

---

## O P I N I O N

During a physical therapy session, a Thera-band resistance band snapped and injured Gary Seifried. Seifried sued The Hygenic Corporation, which manufactured the band, claiming that a marketing defect caused his injury. The trial court granted summary judgment in favor of Hygenic. On appeal, Seifried

contends that the trial court erred in doing so, because (1) he produced evidence that Hygenic failed to warn him about potential hazards of using the band; (2) a better method of distributing an adequate warning to the ultimate user existed—printing the warning on the band itself; and (3) Hygenic failed to timely raise its learned intermediary or bulk-supplier defenses. Hygenic responds that, as a matter of law, it had no duty to warn Seifried, because it is a bulk manufacturer that distributed its products to a learned intermediary, to which Hygenic provided an adequate warning. We conclude that Hygenic established that it provided notice of the hazard to a learned intermediary and thus had no duty to warn Seifried. We therefore affirm.

## Background

Seifried was undergoing treatment for multiple sclerosis at Memorial Hermann Katy Rehabilitation Hospital (the "Hospital") and was confined to a wheelchair. His doctor prescribed physical therapy to improve his strength, which Seifried undertook while he was a patient at the Hospital. Brenda Cossey, a physical therapist at the Hospital, along with her supervisor, developed a physical therapy regimen tailored to Sefried's particular needs. As part of this physical therapy program, Seifried used a Thera-band elastic resistance band to increase his upper-body strength. Cossey tied the band to a bar directly in front of Seifried at his waist level, demonstrated the exercise, and directed Seifried to pull the band

2

toward him in a curling motion. When Seifried stretched the band, pulling it toward his head and shoulders, it snapped. The band recoiled and hit him in the eye. Seifried suffered a severe eye injury. The Hospital disposed of the broken resistance band shortly thereafter; it was never inspected by the parties post-accident.

Hygenic manufactured the Thera-band resistance band and distributed it to the Hospital in a large, bulk roll. The therapists at the Hospital or their supervisors would cut off lengths of the roll to suit a particular patient, like Seifried, and the exercise in which he was engaged.

Each roll is packaged with a product warning insert. This insert contained several warnings, including a warning against pulling the Thera-band toward the user's head. Specifically, the insert warned: "Do not use the resistance bands in any manner that may cause them to snap towards the head and cause injury to eyes." It further provided that the resistance bands should be used "only upon the recommendation, and under the direction of, a trained, licensed healthcare professional." Cossey had read the warning insert, including the specific warnings against drawing the band toward a person's head or face, prior to Seifried's injury. A product manual was also available at the Hospital. The manual included further warnings regarding the particular curl exercise in which Seifried was engaged when he was injured: "User must wear suitable eye protection such as safety

3

goggles during this exercise to protect against possibility of eye injury as a result of the band or tube snapping toward the face if grip is lost or if the band or tube breaks." Cossey also had read these warnings.

Cossey is trained and certified as an occupational therapist. She had training specifically in the use of the Thera-band Seifried used. She testified that resistance bands were readily available at the Hospital, and that she had used them on many occasions. Cossey inspected the resistance band and demonstrated the exercise to Seifried before he began to use it. She supervised Seifried as he performed the exercise.

Seifried asserted a cause of action against Hygenic for negligent failure to warn. Hygenic moved for summary judgment, maintaining that it owed no duty to Seifried because Hygenic distributed the bands to an intermediary to whom it had provided an adequate warning about the potential injury to a user's eye if the user drew the resistance band toward the face, as occurred here.

## Discussion

*Standard of Review*

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is thus

entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Traditional summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* A genuine issue of material fact exists if the non-movant produces more than a scintilla of probative evidence regarding the challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

When, as here, "a trial court's order granting summary judgment does not specify the grounds relied upon, [we] affirm the summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). If the appellant fails to negate every possible ground upon which the judgment may have been granted, an appellate

5

court must uphold the summary judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex.App.—Houston [1st Dist.] 2002, no pet.).

### *Learned Intermediary and Bulk-Supplier Doctrines*

A prerequisite to tort liability is the existence of a legally cognizable duty. *Firestone Steel Prods. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). Whether a legal duty exists is a question of law. *Id.*; *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *see, e.g.*, *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 595 (Tex. 1986) (holding that existence of duty to warn is question of law).

A manufacturer generally has a duty to inform users of potential harm associated with the use of its product. *Alm*, 717 S.W.2d at 591. In a negligent failure to warn case, a manufacturer has a duty to warn if a reasonably prudent person in the manufacturer's position would warn of hazards associated with the use of its product. *Id.*; *Munoz*, 732 S.W.2d at 65.

A manufacturer or supplier may, in certain situations, depend on an intermediary to communicate a warning to the ultimate user of a product. *Alm*, 717 S.W.2d at 591; *Firestone Tire & Rubber Co. v. Battle*, 745 S.W.2d 909, 914 (Tex. App.—Houston [1st Dist.] 1988, writ denied). The presence of an intermediary, however, does not excuse the manufacturer from warning those whom it should

6

reasonably expect to be endangered by the use of its product. *Alm*, 717 S.W.2d at 591; *Firestone*, 745 S.W.2d at 914. Rather, the manufacturer must have a reasonable assurance that its warning will reach those endangered by the use of its product. *Alm*, 717 S.W.2d at 591; *Firestone*, 745 S.W.2d at 914.

For example, when a drug manufacturer properly warns a prescribing doctor of the dangers of its product, the manufacturer is excused from warning each patient who receives the drug. *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 157–58 (Tex. 2012); *Alm*, 717 S.W.2d at 591. The prescribing doctor stands as a learned intermediary between the manufacturer and the consumer—the doctor is entrusted with passing relevant warnings regarding the use of the drug. *Centocor, Inc.*, 372 S.W.3d at 156. The drug manufacturer can reasonably rely on the doctor to pass along the warning, because doctors are trained and experienced in treating and caring for patients, familiar with the properties of the drugs, and supervise and monitor the administration of the drug. *Id.* In such a situation, it is reasonable for a manufacturer to rely on an intermediary to pass on its warnings. *Id.*

The same concept applies if a bulk supplier sells a product to another manufacturer or distributor who, in turn, packages and sells the product to the public. *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 185–86 (Tex. 2004); *Alm*, 717 S.W.2d at 592; *Munoz*, 732 S.W.2d at 66. If the bulk supplier may reasonably rely on the intermediary to pass along the warning, it need warn only its

7

intermediate distributor and not each individual consumer. *Humble Sand & Gravel, Inc.*, 146 S.W.3d at 185–86; *Glenn v. Kinco Crane, Inc.*, 836 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1992, no writ). In determining whether a bulk supplier may reasonably rely on an intermediary to pass on the warning, courts may consider whether the intermediary is (1) adequately trained, (2) familiar with the properties of the product and its safe use, and (3) capable of passing on its knowledge to consumers. *Alm*, 717 S.W.2d at 592.

Here, aspects of both situations exist. Like doctors in the prescription drug situation, physical therapists are experienced in treating and caring for patients, are trained in and familiar with the use of resistance bands used for physical therapy, and supervise and monitor the patients as they use the bands. *See Centocor, Inc.*, 372 S.W.3d at 156–59. The therapists directly interact with the patient and provide direction and a personalized exercise regimen tailored to the particular needs of the patient. Therefore, like a doctor prescribing drugs, a physical therapist designing and supervising a physical therapy regimen can pass on applicable warnings to the patient, based on the patient's physical condition and particular needs. *See id.*

Hygenic is also like the bulk-supplier that provides its product to a distributor, which then packages the product for sale to the public. *See Humble Sand & Gravel, Inc.*, 146 S.W.3d at 185–86; *Alm*, 717 S.W.2d at 592; *Munoz*, 732 S.W.2d at 66. Hygenic supplied bulk rolls of Thera-band resistance bands to the

8

Hospital. At the Hospital, the physical therapists processed the roll by cutting off a portion at a length suitable for Seifried's body size and particular exercise regimen. The Hospital, through Cossey, then provided this length of resistance band to Seifried, the ultimate user, to use with Cossey's instruction and under her supervision. *See Humble Sand & Gravel, Inc.*, 146 S.W.3d at 186; *Alm*, 717 S.W.2d at 592.

It was reasonable for Hygenic to rely on the Hospital and its physical therapists to pass on to its patients any warnings applicable to a particular exercise. *Alm*, 717 S.W.2d at 592. The physical therapist here, Cossey, was a trained, certified, health care professional, with training specific to the use of a resistance band. *See id.* She had used Thera-band resistance bands on multiple occasions, and she had read both the warnings on the insert and the product manual's instructions regarding how to safely use the band. She was familiar with the properties of the band and its safe use. *See id.* With her supervisor, Cossey established Seifried's physical therapy plan and the exercises Seifried was to conduct with the resistance band. Cossey instructed Seifried on the use of the resistance band and demonstrated exercises to Seifried. Cossey was therefore capable of warning Seifried of the risks associated with the use of the resistance band while directly supervising its use. *See id.*

Seifried argues that a warning on the resistance band itself was feasible and could have directly warned the ultimate user. Feasibility, however, is not the rationale for the learned intermediary doctrine. *Centocor*, 372 S.W.3d at 157; *Humble Sand & Gravel, Inc.*, 146 S.W.3d at 191. Instead, the doctrine is based on the notion that some intermediaries can better convey a warning to increase its efficacy, depending on an analysis under the factors reviewed above. *Humble Sand & Gravel, Inc.*, 146 S.W.3d at 190–91; *Centocor*, 372 S.W.3d at 157. The Hospital and Cossey directly supervised and monitored Seifried as he engaged in a personalized physical therapy regimen developed by the Hospital and its employees. Cossey had experience and training with the resistance bands. The Hospital was in a better position to warn Seifried about potential harm resulting from the use of the resistance band in the particular exercises assigned as part of Seifried's physical therapy plan.

Accordingly, we conclude that Hygenic's duty to warn extended to the intermediary, the Hospital, and not the ultimate user of the resistance band, Seifried. We therefore analyze whether the warning to the Hospital was adequate. *See Alm*, 717 S.W.2d at 591 (holding that even if duty to warn owed only to intermediary, warning to intermediary must be adequate).

### *Adequacy of the Warning*

Generally, whether a warning is adequate is a question of fact. *Alm*, 717 S.W.2d at 592. However, if a warning specifically mentions the circumstances complained of, then the warning is adequate as a matter of law. *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App.—Waco 1993, writ denied) (affirming summary judgment in favor of manufacturer where package insert warned of precise side effect that plaintiff suffered); *see Ackermann v. Wyeth Pharms.*, 525 F.3d 203, 208 (5th Cir. 2008); *Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 95 n.6 (Tex. App.—Texarkana 2000, no pet.).

A warning insert, cautioning against misuse of the resistance band, accompanied each Thera-band roll distributed to the Hospital, and a manual containing additional warnings was available to the Hospital employees. Hygenic warned against drawing the band toward the user's head or using the band in any manner that could cause it to snap toward the user's head, potentially causing an injury to the user's eyes. The product manual states that users should wear eye protection. Cossey had reviewed both the manual and the warning insert before she supervised Seifried's therapy. Seifried pulled the band toward his head and shoulder area in a curling motion. The band broke and struck him in the face, causing the injury to his eye. This is precisely the circumstance that Hygenic warned against—drawing the band toward the user's head, without eye protection.

Because Hygenic notified Cossey and the Hospital of the potential injury to the user if he used the band precisely in the manner described, the warning was adequate as a matter of law. *See Rolen*, 856 S.W.2d at 609.

### *Failure to Plead Affirmative Defenses*

After moving for summary judgment, but before the trial court heard the motion, Hygenic amended its pleadings to include the learned intermediary doctrine. Seifried objects that the trial court erred in considering the motion, because Hygenic did not plead the learned intermediary doctrine as an affirmative defense before moving for summary judgment on that ground. The learned intermediary doctrine, however, is not an affirmative defense. *Centocor*, 372 S.W.3d at 165–66. Rather, it is a consideration to evaluate to whom a defendant owes the duty to warn. *Id.* Hygenic timely asserted the doctrine in its motion for summary judgment and contended that it owed no duty to Seifried; it was not required to also plead the doctrine separately as an affirmative defense. *See id.*

### Conclusion

Hygenic adequately warned the Hospital of the risk that a Thera-band band could snap and cause an eye injury. Because the Hospital qualifies as an intermediary on whom Hygenic reasonably could have relied to pass the warning to Seifried, we conclude that Hygenic had no duty to warn Seifried personally;

thus, the trial court properly granted Hygenic's motion for summary judgment. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Higley, and Bland.